UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MOORE, ROCKY D. and | ) | Case No. 11-11207-R |
| MOORE, HOLLY M., | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |

| | | |
|---|---|---|
| ROCKY D. and HOLLY M. MOORE, | ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Adv. No. 16-1030-R |
| | ) | |
| STATE OF OKLAHOMA, ex rel. OKLAHOMA TAX COMMISSION, | ) ) | |
| | ) | |
| Defendant. | ) | |

Filed/Docketed
Mar 08, 2017

## ORDER DENYING
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Before the Court is Plaintiffs' Motion for Summary Judgment and Brief in Support Thereof ("Motion") (Adv. Doc. 9) filed by Plaintiffs/Debtors Rocky D. and Holly M. Moore (the "Moores") on November 20, 2016; State of Oklahoma, ex rel. Oklahoma Tax Commission's Limited Response to Plaintiffs' Motion for Summary Judgment and Brief in Support Thereof ("Response") (Adv. Doc. 10) filed by Defendant State of Oklahoma, ex rel. Oklahoma Tax Commission ("OTC") on December 9, 2016; and Plaintiffs' Reply Brief in Support of Plaintiffs' Motion for Summary Judgment and Brief in Support Thereof (Adv. Doc. 11), filed by the Moores on January 13, 2017.

The Moores allege that OTC violated the discharge injunction when it filed a State Tax Warrant to collect discharged tax penalties. OTC asserts that the penalties were not discharged. But even if it is determined that the penalties were discharged, OTC argues that the Moores cannot establish that OTC willfully violated the discharge injunction because OTC had a good faith basis to believe that the penalties were excepted from the discharge.

**I.      Jurisdiction**

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334, 157(a) and (b)(2)(I), and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

**II.     Summary judgment standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and is "entitled to judgment as a matter of law."[1] A fact is "'material' if under the substantive law it is essential to the proper disposition of the claim."[2] An issue is "'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[3]

"[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine

---

[1] Fed. R. Civ. P. 56(a), made applicable to this proceeding by Bankruptcy Rule 7056.

[2] Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).

[3] Adler, 144 F.3d at 670, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

issue for trial."[4]  Reasonable inferences that may be made from the record should be drawn in favor of the non-moving party.[5]

## III. Undisputed facts

On April 29, 2011 (the "Petition Date"), the Moores filed a joint petition seeking relief under Chapter 7 of the Bankruptcy Code.  On August 9, 2011, the Moores were granted a discharge of all dischargeable debts.  During the pendency of the bankruptcy, OTC filed a proof of claim, participated in the distribution of the Moores' assets, and received notice of the discharge.

In April 2015, OTC issued a Tax Warrant against Mr. Moore for unpaid tax penalties and interest ("Tax Warrant"), and caused the Tax Warrant to be recorded and indexed in the Tulsa County land records.[6]  The debt sought to be collected through the Tax Warrant mechanism related to sales taxes that Mr. Moore's wholly owned limited liability company ("LLC") failed to pay for the tax periods of October 2006, November 2006, March 2007,

---

[4]Anderson, 477 U.S. at 249.

[5]See Adler, 144 F.3d at 670.

[6]Under Oklahoma law, the OTC "shall, upon issuance of the warrant, file with the county clerk . . . a copy thereof, and . . . the county clerk shall record and index such warrant in the same manner as judgments[.]" 68 O.S. § 231(B).  The filing is "evidence and notice of the state's lien upon any interest in any real property of the taxpayer against whom such warrant is issued, until such tax, penalty and interest accruing thereon is paid." Id. "When a tax warrant has been issued and filed as provided in this section, the Tax Commission shall have all of the remedies and may take all of the proceedings thereon for the collection thereof which may be had or taken upon a judgment of the district court." Id. § 231(K).

April 2007, May 2007, June 2007, February 2008, and June 2008 through January 2009. The amount of the debt was $31,054.04 and consisted of the following components–

> Interest - $16,371.50
> Penalties - $14,456.54
> Tax warrant penalty - $200.00
> Filing fee - $26.00

The Moores appear to concede that some of the debt was not discharged,[7] but they contend that penalties assessed for the periods October 2006, November 2006, March 2007, April 2007, May 2007, June 2007, and February 2008 (seven of the fifteen tax periods, hereinafter referred to as the "Penalties at Issue") were discharged in August 2011.

IV.   **Analysis**

The discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt

---

[7]Interest, for example, is incorporated into the tax claim rather than considered a separate debt for the purpose of priority and dischargeability.  See, e.g., Leathley v. Commissioner, T.C. Memo. 2010-194 at 2 ("A debtor remains personally liable after his discharge for the principal amount of a nondischargeable tax debt and any prepetition interest on that tax debt that was not satisfied out of the bankruptcy estate. Bruning v. United States, 376 U.S. 358, 360 (1964); In re Larson, 862 F.2d 112, 119 (7th Cir. 1988).  A debtor also remains personally liable for postpetition interest where the underlying tax debt is not discharged. Bruning v. United States, *supra* at 360; Hanna v. United States, 872 F.2d 829, 831 (8th Cir. 1989); Burns v. United States, 887 F.2d 1541, 1543 (11th Cir. 1989).  Interest is treated as an integral part of the tax debt upon which it accrues. Bruning v. United States, *supra*. Interest has therefore been treated as part of the 'claim', is accorded the same priority status as the underlying liability, and has been found to be nondischargeable where the underlying liability is nondischargeable. In re Larson, *supra* at 119."). See also In re Bates, 974 F.2d 1234, 1237 (10th Cir. 1992) (prepetition interest on taxes has same priority as underlying tax debt).

4

as a personal liability of the debtor[.]"[8]  The Moores contend that filing the Tax Warrant constituted an act to collect the discharged penalties from Mr. Moore personally, OTC knew the penalties were discharged, and thus, OTC violated the discharge injunction.

Bankruptcy courts possess "the equitable power to enforce and remedy violations of . . . the discharge injunction[.]"[9]  A creditor that knowingly violates the discharge injunction may be held in contempt, and sanctions in the form of damages may be awarded to the debtor.[10]  The party seeking redress for contempt has the burden of establishing by clear and convincing evidence that "the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction."[11]

Although OTC knew the Moores had discharged their dischargeable debts, OTC denies that the discharge was applicable to the Penalties at Issue or any other portion of the debt described in the Tax Warrant.  Further, OTC contends that even if the Court determines that the Penalties at Issue were discharged, OTC did not knowingly violate the discharge because it had a good faith basis to believe that the discharge was not applicable.

The law concerning dischargeability of taxes and penalties is confusing at best, starting with the relevant statutes that are characterized by double and triple negative

---

[8] 11 U.S.C. § 524(a)(2).

[9] Paul v. Iglehart (In re Paul), 534 F.3d 1303, 1306 (10th Cir. 2008) (citations omitted); 11 U.S.C. § 105(a).

[10] See Zilog, Inc. v. Corning (In re Zilog, Inc.), 450 F.3d 996, 1007 (9th Cir. 2006) (citations omitted).

[11] Id.

constructions and incorporate other statutes by reference. Section 523(a) of the Bankruptcy Code[12] lists nineteen categories of debts that are excepted from discharge. Two categories arguably govern here. Section 523(a)(1)(A) concerns certain tax debts, and excepts from discharge any debt –

> for a tax or a customs duty–
>> of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed[.][13]

Section 507(a), referred to in Section 523(a)(1)(A), lists the types of expenses and claims that have priority in payment from the bankruptcy estate over general unsecured claims; all claims in each level of priority must be paid in full before the next level of priority claims may participate in distributions from the estate. Section 507(a)(8) gives certain "allowed unsecured claims of governmental units" eighth priority in the distribution scheme. Those claims include certain income taxes, property taxes, employment taxes, excise taxes, duties, and relevant to this case, "a tax required to be collected or withheld and for which the debtor is liable in whatever capacity" (hereinafter, "trust fund taxes") and "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss" (hereinafter, "compensatory tax penalties").[14] While some types of tax claims are granted

---

[12]Unless otherwise stated, all text references to "Sections" herein relate to sections of the Bankruptcy Code, Title 11 of the United States Code.

[13]11 U.S.C. § 523(a)(1)(A).

[14]11 U.S.C. § 507(a)(8)(C) and (G).

priority only to the extent that a transaction or event relating to the tax occurred within a certain time period prepetition, it is notable that trust fund taxes and compensatory tax penalties are granted priority regardless of the age of the debt.

Section 523(a)(7) concerns dischargeability of debts for certain fines, penalties, and forfeitures. It provides that the discharge does not apply to any debt –

> to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty–
>
> (A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or
>
> (B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition[.][15]

The Penalties at Issue were labeled by OTC as "penalties," and the Moores contend that the Penalties at Issue were discharged under Section 523(a)(7)(B), so it makes sense to start the analysis with Section 523(a)(7). Under this section, the general rule is: If a debt (1) is a penalty, (2) is payable to a governmental unit, and (3) does not compensate for actual pecuniary loss (*i.e.*, is punitive rather than compensatory), the debt is *not* discharged. But even if a debt meets these three criteria, if the debt is a ***tax penalty*** – as opposed to some other kind of fine, penalty or forfeiture – the penalty will be discharged if it falls within the terms of subsections (A) or (B). Subsection (A) refers to Section 523(a)(1), the category of nondischargeable taxes. If the penalty relates to some type of tax that is *not* excepted from

---

[15] 11 U.S.C. § 523(a)(7).

7

discharge by Section 523(a)(1), then the penalty, along with the related tax, is discharged. Subsection (B) is a sort of statute of limitations that discharges tax penalties "imposed with respect to a transaction or event that occurred" more than three years prior to the petition date.[16]

The Moores argue that the Penalties at Issue meet the standard set forth in subsection (B). The date three years before the Moores' Petition Date was April 29, 2008, so, they claim, the penalties imposed for the seven sales tax periods preceding April 29, 2008, were discharged. The Moores rely on Roberts v. IRS (In re Roberts),[17] a 1989 case from this district, which held that penalties imposed on debtors for failing to file federal income tax returns that were due more than three years prepetition were dischargeable penalties under Section 523(a)(7)(B).[18] It was undisputed that the income taxes themselves were excepted from discharge (*i.e.*, taxes "with respect to which a return, . . . if required . . . was not filed").[19] The IRS argued that Section 523(a)(7)(A) was applicable, and since under that section, penalties were discharged only if the underlying taxes did not fall within the parameters of Section 523(a)(1) (nondischargeable taxes), failure-to-file penalties were not

---

[16] Id.

[17] 94 B.R. 707 (Bankr. N.D. Okla. 1989) (Covey, J.), *aff'd* 906 F.2d 1440 (10th Cir. 1990).

[18] Roberts, 94 B.R. at 709.

[19] 11 U.S.C. § 523(a)(1)(B).

excepted from discharge.[20] The Court concluded that the plain language of Section 523(a)(7) demonstrated that (A) and (B) were two separate, independent exceptions to the general rule that penalties are not dischargeable, so even though the penalties were not discharged under (A), they were old enough to be discharged under (B).[21] The Tenth Circuit affirmed.[22]

OTC does not concede that Section 523(a)(7)(B) applies, but contends that even if it did, OTC did not assess the penalty related to the LLC's unpaid sales taxes against Mr. Moore individually until September 18, 2009,[23] so the "event" that gave rise to penalties against Mr. Moore occurred within the three years period preceding the Petition Date. The Moores counter that the penalties were not imposed on account of the assessment against Mr. Moore; rather, the "event" triggering the penalty occurred in 2006, 2007 and 2008, when the LLC's sales tax liability occurred. If Section 523(a)(7) governs the dischargeability of the Penalties at Issue, as the Moores contend, then there appear to be issues of fact, or mixed issues of fact and law, concerning the "event" that triggered the penalties.

Cases relied upon by OTC suggest that Section 523(a)(7) does not govern dischargeability of the tax penalties in this case, however. OTC argues that the Roberts case is distinguishable because it involved a penalty imposed on debtors for failing to file their

---

[20] Roberts, 94 B.R. at 709.

[21] Id.

[22] In re Roberts, 906 F.2d 1440 (10th Cir. 1990).

[23] In its Response, OTC refers to an assessment letter dated September 18, 2009, as Exhibit A, but no exhibits were attached to the Response.

9

own tax returns, not a penalty imposed upon an individual who was responsible for remitting an entity's trust fund taxes to the taxing authority. OTC contends that Matlock v. United States (In re Matlock),[24] also a case from this district decided in 1989, is a closer fit because it examines the dischargeability of penalties imposed upon corporate principals for failing to turn over to the IRS the corporation's withholding taxes – *i.e.*, trust fund tax penalties.

The issue in Matlock was *not* whether the penalty was dischargeable under Section 523(a)(7)(A) or (B) (as was the case in Roberts) but whether Section 523(a)(7) applied at all. Under the Internal Revenue Code, the amount of the penalty assessed against a principal of a corporation for failing to collect and turn over required withholding taxes was equal to the amount of the withholding taxes not turned over, which the parties and Court called a "100% penalty."[25] The issue was "whether the '100% penalty' of 26 U.S.C. § 6672 is a *penalty* within 11 U.S.C. § 523(a)(7)(B), or a *tax* within 11 U.S.C. § 523(a)(1)(A), § 507(a)(7)(C):[26] if a penalty, it is subject to the three-year bar of 11 U.S.C. § 523(a)(7)(B); if a tax, it is not subject to the 3-year bar."[27]

Determining the character of the assessment involved consideration of additional subsections of Sections 523(a)(7) and 507(a)(8). Recall that generally, Section 523(a)(7)

---

[24]104 B.R. 389 (Bankr. N.D. Okla. 1989) (Wilson, J.).

[25]Matlock, 104 B.R. at 390, *citing* 26 U.S.C. § 6672.

[26]Prior to 2005, priority tax claims were given seventh priority, and therefore were set forth in Section 507(a)(7). Priority tax claims are currently codified in Section 507(a)(8).

[27]Matlock, 104 B.R. at 390.

renders non–dischargeable a debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and *is not compensation for actual pecuniary loss*."[28]  A tax penalty may be discharged under Section 523(a)(7)(A) or (B) only if the penalty meets Section 523(a)(7)'s introductory criteria.  Compensatory tax penalties do not.

Recall also that Section 523(a)(1)(A) excepts from discharge taxes "of the kind and for the periods specified in section . . . 507(a)(8)" – *i.e.*, priority claims of governmental units.[29]  Section 507(a)(8)(G) grants priority to "a penalty related to [allowed unsecured claims of governmental units] and *in compensation for actual pecuniary loss*."[30]

In Matlock, the Court held that the 100% penalty imposed by the IRS on individual third parties for trust fund taxes not paid by an entity under their control was "in compensation for actual pecuniary loss" to the government, and as such was either a "tax" under Section 507(a)(8)(C) (a "tax required to be collected or withhold and for which the debtor is liable in any capacity") or a "penalty" under Section 507(a)(8)(G).[31]  In either case, the penalty was excepted from discharge by Section 523(a)(1)(A).

The Moores argue that the holding in Matlock was superceded when the Tenth Circuit affirmed Roberts in 1990.  The issue addressed in Roberts, however, was whether the three-

---

[28] 11 U.S.C. § 523(a)(7) (emphasis added).

[29] 11 U.S.C. § 523(a)(1).

[30] 11 U.S.C. § 507(a)(8) (emphasis added).

[31] Matlock, 104 B.R. at 392-93.

year limitation applied to all tax penalties that fell within the scope of Section 523(a)(7). The Tenth Circuit concluded that even if the underlying tax was not dischargeable, the penalty would be discharged if the underlying "transaction or event" occurred more than three years prepetition.[32] In Matlock, however, the Court held that the penalty at issue, one which compensated the government for its loss, simply did not fall within the scope of Section 523(a)(7), and therefore was not subject to the three-year limitation period contained in Section 523(a)(7)(B).[33]

In issuing the Tax Warrant, OTC also relied on the holding in Kelley v. United States (In re Kelley),[34] a 1994 case from this district that was litigated by OTC. The Kelleys' wholly-owned corporation failed to pay its sales taxes, and under the relevant Oklahoma statute, the Kelleys were personally liable for the taxes as principals of the corporation. The sales taxes were more than three years old. OTC contended that the taxes were trust fund taxes under Section 507(a)(7)(C),[35] and thus non-dischargeable under Section 523(a)(1)(A). The Kelleys argued that the taxes were excise taxes under Section 507(a)(7)(E), rather than trust fund taxes. Unlike trust fund taxes, excise taxes were priority claims only to the extent they arose within the three years preceding the petition date.

---

[32] Roberts, 906 F.2d at 1445.

[33] Matlock, 104 B.R. at 393. The Matlock case was not appealed.

[34] 171 B.R. 113 (Bankr. N.D. Okla. 1994) (Covey, J.).

[35] Again, at the time the case was decided, priority tax claims were listed in Section 507(a)(7)(C).

The Court concluded that the taxes were trust fund taxes, and therefore Section 507(a)(7)(E)'s limitations period did not apply. OTC specifically relies upon the holding that sales taxes are trust fund taxes and that "a trust fund tax . . . is nondischargeable regardless of its age."[36]  Kelley is distinguishable, however, because it did not involve penalties related to sales taxes. The Moores do not dispute that sales taxes are trust fund taxes rather than excise taxes under Section 507, and that trust fund taxes are non-dischargeable regardless of age, but argue that *penalties* related to sales taxes are governed by Section 523(a)(7) rather than Section 523(a)(1)(A). As noted in Matlock, however, the fact that a governmental unit labels the debt it seeks to collect as a "penalty" does necessarily mean the debt is not a "tax."[37]

The Court notes that under Oklahoma law, individuals responsible for collecting and remitting sales taxes on behalf of an entity are personally liable for the taxes, which liability "shall be determined in accordance with the standards for determining liability for payment of federal withholding tax pursuant to the Internal Revenue Code . . . or regulations promulgated" thereunder.[38]  This statute suggests that Oklahoma may have adopted rules or regulations similar to those employed by the IRS for collection of an entity's trust fund taxes

---

[36]Kelley, 171 B.R. at 114.

[37]Matlock, 104 B.R. at 391-92. See also United States v. Sotelo, 436 U.S. 268, 275 (1978) (Withheld taxes are "taxes" notwithstanding the fact that the IRS calls them "penalties" when it seeks to recover those taxes from another party, and as taxes, they were nondischargeable).

[38]68 O.S. § 253.

from responsible individuals, such as imposing a 100% penalty on the individual. Because the Tax Warrant does not reflect any tax due, just penalties, interest and fees, the Court infers for purposes of the Moores' Motion only, that such a rule may exist.[39] At this juncture, however, the Court cannot determine whether the Penalties at Issue are compensatory tax penalties or punitive tax penalties.

## V.    Conclusion

Upon consideration of the limited undisputed facts, the parties' legal arguments, and the relevant law, the Court concludes that the record on summary judgment is insufficient to grant summary judgment to either party. First, the character of the Penalties at Issue is unknown – are they compensatory or punitive? Second, if the penalties are punitive, and Section 523(a)(7) applies, what was the "transaction or event"[40] that triggered the imposition of the penalties? Third, if the penalties were in fact discharged under Section 523(a)(7)(B), questions of fact exist regarding if and when OTC knew or should have known they were

---

[39]Reasonable inferences from the record must be made in OTC's favor.

[40]11 U.S.C. § 523(a)(7)(B).  In Wilson v. United States (In re Wilson), 407 B.R. 405, 408-10 (B.A.P. 10th Cir. 2009), the appellate panel acknowledged that the Tenth Circuit "did not address what constitutes a 'transaction or event' under § 523(a)(7)(B)" in Roberts, and therefore "Roberts does not bind us" in determining when the event giving rise to penalties for filing frivolous returns occurred. In that case, the debtor filed frivolous returns for tax years 1997 through 1999 in 2005.  The panel concluded that the event warranting the penalties was the filing of the returns (one year prepetition) rather than dates the tax accrued (more than three years prepetition).

14

discharged, and whether OTC had a good faith basis to believe the penalties were not discharged.[41]

Because the record is insufficient to establish that the Moores are entitled to judgment as a matter of law, the Motion is denied.

**SO ORDERED** this 8th day of March, 2017.

DANA L. RASURE
UNITED STATES BANKRUPTCY JUDGE

---

[41] See, e.g., Wilson v. United States (In re Wilson), 527 B.R. 635 (Bankr. N.D. Cal. 2015) (sanction against IRS was limited to giving back funds it intercepted to satisfy a discharged penalty, because IRS's position that the penalty had not been discharged had some merit). It is worth noting that Sections 523(a)(1) and (a)(7) are self-executing exceptions from discharge, meaning that taxing authorities do not have to seek court authority or permission to collect these types of taxes or penalties after the discharge. Taxing authorities must exercise judgment to determine from the facts of each particular case whether the tax and/or penalty falls within the scope of one of the exceptions in Section 523(a)(1) and (a)(7), aided by relevant case law, and perhaps institutional opinions, manuals or guidelines. The Moores will have the burden to show by clear and convincing evidence that OTC acted knowingly in violation of the discharge injunction.